STATE of Maine

v.

Marie BEAL.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1982.

Decided June 9, 1982.

Michael E. Povich, Dist. Atty., Genevieve Stetson, Asst. Dist. Atty. (orally), Machias, for plaintiff.

Howard & Bowie Law Offices, Edward G. Dardis (orally), Clayton N. Howard, Damariscotta, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

On November 6, 1980, the defendant, Marie Beal, was indicted by a Washington County grand jury (CR–80–156) for the offenses of attempted murder (17–A M.R.S.A. § 152) and aggravated assault with use of a firearm (17–A M.R.S.A. § 208) on her former husband Clyde Yeaton. At a jury trial she was convicted of aggravated assault with use of a firearm and acquitted of the attempted murder charge. On appeal, the defendant has raised two issues: (1) the presiding justice acted improperly in rejecting her plea of guilty to the information after he had accepted her plea; and (2) the presiding justice at trial committed obvious error in instructing the jury on the law of self-defense. We deny the appeal and affirm the judgment of conviction.

On March 6, 1981, as the result of a plea agreement, the defendant appeared in Superior Court for the purpose of entering a plea of guilty to an information (CR–81–54) presented by the state. The information charged her with the offense of aggravated assault, without the severity enhancing element of having committed the offense with use of a firearm. The plea agreement was that the state would dismiss both counts of the indictment (CR–80–156) after sentencing on the offense charged in the information. Following a proceeding pursuant to M.R.Crim.P. 11, the presiding justice accepted the defendant's plea of guilty. At the sentencing proceeding on March 20, 1981, defendant's counsel addressed the court, explaining in detail the defendant's version of the incident which resulted in the shooting of Yeaton. From his inquiry, the presiding justice concluded that the defendant believed she had not committed any crime. He thereupon rejected the previously accepted plea of guilty and ordered the case restored to the trial list.

At a jury trial in May 1981, on the original indictment, the defendant was acquitted of the attempted murder charge and found guilty of the charge of aggravated assault with the use of a firearm. Sentence was imposed and judgment entered on May 29, 1981, at which time the state dismissed the still pending information. Motions for a new trial, arrest of judgment, judgment of acquittal and for consolidation on appeal of cases CR–80–156 and CR–81–54 were filed on June 8, 1981 and heard on July 3, 1981. All motions were denied except the motion to consolidate on appeal, which was granted. Defendant filed a timely notice of appeal to this Court.

I.

We first consider defendant's contention that the trial court committed error in setting aside her plea of guilty to the charge contained in the information after accepting her plea. This is an issue of first impression in this state.

During the Rule 11 proceeding on March 6, 1981, the presiding justice made some inquiries of the defendant to determine if the plea was being knowingly and voluntarily entered. He then obtained from the District Attorney a factual statement of what the state would have introduced as evidence at trial to determine whether there was a factual basis for the charge.

Following the District Attorney's statement, the judge inquired of defendant's attorney if there was anything he wanted to add to what had been said by the District Attorney, to which counsel replied: "Your honor, I would only—I would like to address some of the incidents surrounding this. I could do that at sentencing." At this point the judge accepted the guilty plea, and continued the case for sentencing in order to obtain the benefit of a pre-sentence investigation report. At the sentencing proceeding on March 20, 1981, defendant's counsel addressed the court and gave a long and detailed statement of the shooting incident, all to the conclusion that at no time had defendant acted with a culpable state of mind, an essential element of the crime of aggravated assault. The following colloquy then ensued:

THE COURT: Let's talk about definitions for just a moment.

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: She is charged with and has pled guilty to having intentionally, knowingly or recklessly causing bodily injury with the use of a dangerous weapon. Now, causing bodily injury in and of itself makes the act criminal, right?

DEFENSE COUNSEL: That's correct.

THE COURT: All right. So it must be one of those culpable states of mind, as set forth in section ten, it must be present. Now, a person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result. His conscious object to cause such a result. Obviously, from what you say, Marie Beal did not act intentionally.

DEFENSE COUNSEL: That is correct.

THE COURT: In your view of the case, she doesn't admit she acted intentionally, is that correct?

DEFENSE COUNSEL: That's correct.

THE COURT: Point number two. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his con-duct will cause such a result. Now, it seems to me you say she entered the trailer having a loaded weapon in her hand, and everything that developed after that was no fault of hers, that developed as a result of this scuffle?

DEFENSE COUNSEL: She had no idea that he was in the trailer, Your Honor.

THE COURT: That he was in the trailer, all right. So it would appear that she doesn't admit to having acted knowingly, is that correct?

DEFENSE COUNSEL: That's correct.

THE COURT: That gets us down to number three, recklessly. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result. If she didn't even know he was in the trailer when she walked in with a loaded gun, it is difficult for me to see how she could have consciously disregarded the risk that her conduct would cause bodily injury to Mr. Yetton.

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: Would you agree with that?

DEFENSE COUNSEL: Yes.

THE COURT: Well, under these circumstances, I don't see how I can impose a sentence in this case, and as I recall it, I questioned Mrs. Beal very carefully at the time I accepted the plea—

DEFENSE COUNSEL: I would add, your Honor, I did not recommend that she take that action.

THE COURT: Well, that of course is something that—that is the way you said it happened, Mrs. Beal, is that correct?

THE DEFENDANT: That's correct.

THE COURT: Just as [defense counsel] explained it?

THE DEFENDANT: That's correct. The reason I had the gun in my hand was to hide the gun, because I didn't want—when I moved, I didn't want his gun with me.

THE COURT: The Court is not going to impose sentence. The Court is going

to direct that the plea of guilty be stricken, withdrawn in this case, CR–81–54, and the indictment that charges two counts is still outstanding, is that not correct?

DISTRICT ATTORNEY: Yes, Your Honor.

THE COURT: Well, under these circumstances, the court is totally satisfied that it cannot accept this plea of guilty. This is a serious offense. Had Mr. Yetton died, I have no doubt what [sic] the charge Mrs. Beal would be facing would be murder. The state has agreed to dismiss the attempted murder charge, and it also dropped the firearm aspect, which provided a minimum two year mandatory term of imprisonment, but for Mrs. Beal to stand up here and state that she committed no crime, creates a situation where it is just impossible for this court to accept that, to continue to impose sentence on the basis of that plea previously accepted.

DEFENSE COUNSEL: Yes, Your Honor.

The presiding judge then directed that the plea of guilty be set aside and a plea of not guilty be entered on behalf of the defendant, and that the matter be set for trial.

The due process clause of the fourteenth amendment of the United States Constitution requires state trial courts to obtain from a defendant who pleads guilty to serious criminal charges information showing that the plea is made voluntarily and knowingly. See McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Morgan v. State, Me., 287 A.2d 592 (1972). State policy, though not constitutionally mandated, requires that the proceeding be on-the-record and sufficient to demonstrate compliance with constitutional requisites. See Morgan v. State, Me., 287 A.2d 592 (1972); Clewley v. State, Me., 288 A.2d 468 (1972). Rule 11 of the Maine Rules of Criminal Procedure was promulgated for the purpose of establishing a procedural method to insure the carrying-out of these constitutional and procedural requisites.[1] A reading of Rule 11 demonstrates the comprehensive on-the-record inquiry the trial judge is required to make before he can accept a tendered plea of guilty. Nonetheless, the rule is silent as to the judge's authority or discretion to give any further consideration to

1. Rule 11, M.R.Crim.P., provides in pertinent part:

(b) PREREQUISITES TO ACCEPTING A PLEA OF GUILTY OR NOLO CONTENDERE. In all proceedings in which the office charged is murder or a Class A, Class B, or Class C crime, before accepting a plea of guilty or nolo contendere, the court shall insure:

(1) That the plea is made with knowledge of the matters set forth in subdivision (c); and

(2) That the plea is voluntary within the meaning of subdivisions (d) and (e); and

(3) That there is a factual basis for the charge, as provided in subdivision (f); and

(4) That an unrepresented defendant has waived his right to counsel.

(c) INSURING THAT THE PLEA IS MADE KNOWINGLY. Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) The elements of the crime charged, the maximum possible sentence and any mandatory minimum sentence; and

(2) That by pleading guilty or nolo contendere he is relinquishing the right to a trial, at which he would have the following rights:

(A) The right to be considered innocent until proven guilty by the state beyond a reasonable doubt; and

(B) The right to a speedy and public trial by the court or by a jury; and

(C) The right to confront and cross-examine witnesses against him; and

(D) The right to present witnesses on his behalf and the right to either be or decline to be a witness on his own behalf.

(d) INSURING THAT THE PLEA IS VOLUNTARY. Before accepting a plea of guilty or nolo contendere, the court shall determine that the plea is the product of the defendant's free choice and not the result of force, threats or promises other than those in connection with a plea agreement.

The court shall make this determination by addressing the defendant personally in open court.

these requisites once the guilty plea has been accepted but before sentence is imposed and judgment entered.

We consider whether a trial court in this state has the authority, sua sponte, to set aside or vacate a plea of guilty once such a plea has been accepted and in the absence of a timely request on the part of the defendant to do so.[2] The defendant asserts that a Maine trial court is without such authority. She argues that once the plea of guilty has been accepted by the court, it is a conviction as conclusive as a jury verdict; and that after a guilty plea nothing remains for the court to do but give judgment and sentence.[3]

 There is a dearth of authority on the issue before us. Rule 57 of the Maine Rules of Criminal Procedure provides:

(a) Procedure when none specified. When no procedure is specifically prescribed the court shall proceed in any lawful manner not inconsistent with the Constitution of the State of Maine, these rules, or any applicable statutes.

We decide that every court in this state has the inherent power to conform all of its procedures to the fundamental requirements of the due process clauses of the Maine and United States Constitutions. The trial judge's concern for the constitutional requirements and procedural safeguards inherent in the acceptance of a plea of guilty does not end with the acceptance of the plea; rather, justice demands that

his concern continue until final judgment is entered. Under the circumstances of this case, the unequivocal assertion by the defendant that she was not guilty of any crime clearly invokes this concern. We conclude that whenever a defendant has plead guilty to a crime of the classes set forth in M.R.Crim.P. Rule 11(b), and the court has good reason to believe that such plea was not entered knowingly, with a full understanding of the elements of the crime charged, that court has the inherent power to set aside the guilty plea on its own initiative prior to the entry of judgment. We determine that such a procedure is not inconsistent with the Constitution of the State of Maine, with any Maine Statutes, the Maine Rules of Criminal Procedure, or the United States Constitution.

 We turn then to a consideration of whether, in this case, the presiding justice abused his discretion by setting aside defendant's plea of guilty. A careful review of the record of the Rule 11 proceeding conducted on March 6, 1981, discloses that the presiding judge did not comply with one of the prerequisites of accepting a plea of guilty required by Rule 11; that of insuring that the plea is made knowingly. Subsection (c) requires that "Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and inform him of, and determine that he understands, the following: (1) the elements of the crime charged, ..."

---

**2.** M.R.Crim.P. 32(d) permits a defendant to file a motion to withdraw a plea of guilty before sentence is imposed or imposition of sentence is suspended.

**3.** In support of her position, the defendant cites *State v. Harriman*, Me., 259 A.2d 752, 754 (1969), and *Jenness v. State*, 144 Me. 40, 44–45, 64 A.2d 184, 186 (1949). In *Jenness*, the defendant pleaded guilty and attacked his conviction on the ground that the statute, under which he was sentenced, was unconstitutional. The defendant relies on a comment in *Jenness* in which the Court said that "a plea of guilt is in itself a conviction. It is as conclusive as a verdict of a jury. The court has nothing to do but give judgment and sentence. *Kercheval v. United States*, 274 U.S. 220 [47 S.Ct. 582, 71 L.Ed. 1009] [1927]." The *Harriman* case cites *Jenness* for the principle quoted above.

Both *Jenness* and *Harriman* are clearly distinguishable from the case before us. In both cases, the defendant pleaded guilty, judgment was entered, and the issue of the propriety of the plea arose only on appeal. Here, the plea was rejected prior to sentencing or entry of judgment. Even more importantly, the principle relied upon by the defendant is premised upon a voluntary plea of guilty understood by the defendant. *See Jenness, supra.* As we later state in this opinion, the defendant in this case did not knowingly enter a plea of guilty with a full understanding of the charge against her. Finally, *Kercheval* provides no support for the defendant's argument because that case involved the use of a withdrawn guilty plea at a subsequent trial.

The sum and substance of the information obtained by the judge on this requirement during the Rule 11 proceeding is that defendant had received a copy of the information, that she had gone over it with her attorney, and was asserting by her attorney that she understood the nature of the charges against her. At no time did the judge inform the defendant of, and determine that she understood, the elements of the crime of aggravated assault charged in the information. He therefore accepted a plea of guilty without complying with a fundamental part of the Rule 11 proceeding. It was only later, at the sentencing proceeding, after defense counsel made a detailed statement to the effect that the shooting of Yeaton was accidental, that the presiding judge addressed the elements of the crime charged. The result of his inquiry was the defendant's unequivocal assertion to the judge that she fully concurred with what her attorney had just told him as to how the shooting happened, and that she did not consider herself guilty of having committed a crime.

In the face of such a situation, we determine that the trial judge did not abuse his discretion when he ordered the plea of guilty set aside and a plea of not guilty entered on behalf of the defendant. Although the judge did not clearly articulate his reason for striking the guilty plea, other than stating that he could not impose sentence in light of Mrs. Beal's assertion, we discern a concern on his part significantly beyond what the sentencing record reflects. The record clearly establishes that Mrs. Beal did not knowingly enter a plea of guilty with an understanding of the nature of the charges against her on March 6th. There is an unmistakable inference that she had not understood the elements of a culpable state of mind—of having acted either intentionally, knowingly or recklessly—at the time she entered her plea. At the subsequent sentencing proceeding, the painstaking and detailed coverage of the elements of the crime charged, by the judge for the first time, produced a flat assertion

by both the defendant and her attorney that she had not committed a crime.

We note that this is not a situation where the defendant has indicated to the court that she wanted to plead guilty while at the same time not admitting guilt. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (no constitutional error in the trial court accepting a plea of guilty containing protestation of innocence when defendant intelligently concluded that his best interest required entry of plea of guilty and record before judge contained strong evidence of actual guilt). If Mrs. Beal considered it to be in her best interest to enter a plea of guilty notwithstanding her protestations of innocence, she had the burden of so informing the court. The record of the Rule 11 proceeding on March 6, 1981, does not establish that Mrs. Beal voluntarily entered a plea of guilty for special reasons of her own while still understanding the nature of the crime charged. Although not articulated, the record of the hearing on March 20, 1981 amply supports an inference that the judge entertained serious doubts that Mrs. Beal had knowingly entered a plea of guilty. That doubt, coupled with the defendant's unequivocal and strong assertion that she had not committed any crime, justified the trial judge's decision to order her plea set aside. In this we find no abuse of discretion, rather, we find a legitimate concern for the safeguard of the defendant's legal rights.[4]

## II.

The defendant's second claim of error is that the presiding judge erroneously instructed the jury. The defendant correctly concedes that because no objection was made at trial to the given instructions or to a failure to instruct, the obvious error standard applies in our review of the claimed error. *See State v. Daley,* Me., 440 A.2d 1053, 1055 (1982).

---

**4.** Since we hold the trial judge did not abuse his discretion, we need not decide what, if any,

remedy would be available to a defendant in the event of a finding of abuse of discretion.

█ We agree with defendant that the judge in his instructions to the jury misstated a part of the law of justification as provided in 17–A M.R.S.A. § 108(2)(C)(1).[5] The judge essentially instructed the jury that if the defendant had provoked the victim into using deadly force for any reason she (the defendant) was not justified in using deadly force against him (the victim). While we agree with defendant that this part of the instruction was erroneous because the law provides that one must have "the intent to cause physical harm", we conclude that such error was harmless. The existence of the defense of justification (self-defense) did not arise in this trial because no evidence was introduced, or sought to be introduced, which was sufficient to raise a reasonable doubt on the issue. The defendant on appeal has not claimed that she acted while defending herself from the imminent use of deadly force and, at oral argument, conceded that the victim (Yeaton) neither used nor threatened to use deadly force against her at the time of the shooting. On such a state of the evidence, the defendant was not entitled to a jury instruction on the defense of justification (self-defense). This case does not present the situation found by the Law Court in *State v. Daley*, Me., 440 A.2d 1053 (1982), where we vacated a jury verdict finding the defendant guilty of assault because of an erroneous instruction by the presiding judge on the law of justification (self-defense). In that case, the defendant admitted committing the assault and rested his entire defense on a claim of justification (self-defense). We found in that case that the erroneous instruction to the jury on self-defense was therefore crucial to the defendant receiving a fair trial. In this case, the defendant has never claimed she shot the victim in self-defense, but, rather has claimed that she never committed the crime of aggravated assault because the shooting was accidental.

█ Defendant's alternative claim of error, that the judge erred in failing to instruct the jury on the issue of provocation, must fail for the reason that the issue of provocation was not generated by the evidence at trial and therefore no instruction was required.

█ Finally, the defendant argues that the judge committed prejudicial error by failing to instruct the jury on the right to self-defense. She claims, for the first time on appeal, that the presiding justice failed to distinguish between self-defense and the right to self-defense; that her defense was actually not one of self-defense but of the right to self-defense, citing *State v. Sprague*, Me., 394 A.2d 253 (1978) as support for her contention. Defendant has misconceived the applicability of the law of the right to self-defense, as discussed in *Sprague*, to the facts of this case. Before she could invoke the right to self-defense, circumstances must have existed which initially gave her the justification to use deadly force in self-defense pursuant to the provisions of 17–A M.R.S.A. § 108(2). *State v. Sprague*, Me., 394 A.2d 253, 258 (1978). No such circumstances exist in this case; the issue of justification (self-defense) was not generated by the evidence as we have said earlier in this opinion. There was thus no basis for the giving of such an instruction to the jury.

In summary, we conclude there was no obvious error in instructions to the jury.

**5.** The pertinent parts of 17–A M.R.S.A. § 108 read as follows:

2. A person is justified in using deadly force upon another person:

A. When he reasonably believes it necessary and he reasonably believes such other person is:

(1) About to use unlawful, deadly force against himself or a 3rd person; or

(2) Committing or about to commit a kidnapping, robbery or a violation of section 252, subsection 1, paragraph B, or section 253, subsection 1, paragraph A, against himself or a 3rd person . . .

C. However, a person is not justified in using deadly force as provided in paragraph A, if:

(1) With the intent to cause physical harm to another, he provokes such other person to use unlawful deadly force against anyone . . .

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.