Lawrence **LEWIS**, Petitioner

v.

**State of MAINE, Respondent**

**No. Civ.02–135–B–S.**

United States District Court, D. Maine.

April 14, 2003.

---

Lawrence Lewis, Bangor, ME, Plaintiff, pro se.

Donald W. Macomber, Assistant Attorney General, Augusta, ME, Lead Attorney, Attorney to be Noticed, for Maine, State of Defendant.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, Chief Judge.

The United States Magistrate Judge filed with the Court on March 10, 2003 her Recommended Decision. The Respondent filed its partial objections to the Recommended Decision on March 17, 2003 and Petitioner filed his objections on March 24, 2003. I have reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determine that no further proceeding is necessary.

1. It is therefore *ORDERED* that the Recommended Decision of the Magistrate Judge is hereby *AFFIRMED*.

2. The Petition for Writ of Habeas Corpus § 2254 is *DENIED*.

*RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION*

KRAVCHUK, United States Magistrate Judge.

Lawrence Lewis has filed a motion pursuant to 28 U.S.C. § 2254 seeking federal relief from his convictions in the State of Maine for one count of gross sexual assault and one count of unlawful sexual contact. (Docket No. 1.) The State of Maine responded with a motion to dismiss (Docket No. 3; *see also* Docket Nos. 5 & 6), arguing that Lewis's petition is untimely under 28 U.S.C. § 2244(d)(1) and, in the alternative, that his two ineffective assistance of counsel claims are meritless. Because the task of making the threshold timeliness determination vis-à-vis Lewis's federal habeas petition was not merely ministerial I ordered the parties to expand the record to address two concerns. (Docket No.7.) The parties have now expressed their positions on my queries (Docket Nos. 8 & 9) and for the reasons articulated below, I conclude that this § 2254 petition was timely. However, after reviewing Lewis's two claims and the determinations made by the Maine courts, I conclude that his claims have no merit and I recommend that this petition be **DENIED**.

*Timeliness*

The 28 U.S.C. § 2254 statute of limitation is set forth in 28 U.S.C. § 2244. It reads:

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. § 2244(d)(1)(A). This year can be tolled pursuant to § 2244(d) that provides:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.* § 2244(d)(2).

As I indicated in my order to expand the record, in making the § 2244(d)(1)(A)/ § 2244(d)(2) determination the critical dates are as follows. In an opinion dated April 23, 1998, the Maine Supreme Court sitting as the Law Court issued a decision affirming Lewis's conviction and sentence but vacating the sentencing court's restitution order. The Law Court's Mandate with respect to this direct appeal was entered on the superior court's criminal docket on April 27, 1998. On remand, the superior court entered its order on restitution on March 16, 1999. At no point after the entry of either the April 1998 Mandate or the March 1999 order of restitution did Lewis seek review by the United States Supreme Court. Lewis filed his petition for state post-conviction review on April 23, 1999. Findings denying this petition were entered on January 25, 2002, and docketed on January 30, 2002. Lewis appealed this determination and on May 21, 2002, the Court issued an order denying a certificate of probable cause (this order was not docketed until June 21, 2002). Again, Lewis did not seek review by the United States Supreme Court. This 28 U.S.C. § 2254 petition was signed by Lewis on September 4, 2002, and received and docketed by this court on September 6, 2002.[1]

---

**1.** In 2000 Lewis filed two 28 U.S.C. § 2254 petitions attacking these convictions. The

In its motion to dismiss this federal petition the State asserts that the § 2244 year began to run on July 23, 1998, when time elapsed for seeking certiorari review by the United States Supreme Court of the Law Court decision on Lewis's direct appeal. However, the decision was not entered on the criminal docket until April 27, 1998. In its reply to my order to expand the State notes that United States Supreme Court Rule 13(1) provides that Lewis's petition for a writ of certiorari would have had to have been filed no later than ninety days after the "entry of judgment." Sup.Ct. R. 13(1). Rule 13(3) provides that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment ... and not from the issuance date of the mandate (or its equivalent under local practice)." Sup.Ct. R. 13(3). The State has provided a copy of the Law Court's docket that indicates that the "Disposition Date" was April 23, 1998, the same date that the Law Court's published decision lists as the date his appeal was "decided" and the mandate issued. *State v. Lewis*, 1998 ME 83, 711 A.2d 119.

■ I conclude that the State is right on this score; the date the Law Court enters it judgment on its docket controls. *See Clay v. United States*, — U.S. —, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2003) (citing Rule 13(3), observing that, in situations other than when the Court affirms a conviction on the merits or denies a peti-

tion for a writ, finality attaches when the time for filing a certiorari petition expires); *Donovan v. Maine*, 276 F.3d 87, 89 n. 2 (1st Cir.2002) (expressing its view that the date of entry on the docket controls).[2] This is a conclusion that harmonizes with the First Circuit's view, that—for purposes of deciding when the § 2244(d) year commences to run—the § 2254 petitioner is entitled to the ninety days for seeking certiorari review even if no review is sought. *David v. Hall*, 318 F.3d 343, 345 (1st Cir.2003); *Donovan v. Maine*, 276 F.3d 87, 91 (1st Cir.2002); *see also Clay*, 123 S.Ct. at 1077 n. 3 (citing agreement on this issue by all Courts of Appeal that have addressed the issue). I say it harmonizes because in instances in which there are no petitions for certiorari review it makes the § 2244(d)(1) calculation turn on when the United States Supreme Court—measuring from the date of entry of the judgment— would *foreclose* review and thus the judgment would be "final." And, as noted in my order to expand (rejecting Lewis's argument to the contrary), this concept of finality is a different kettle of fish than the § 2244(d)(2) inquiry, one that does not include in the tolling period any unembraced opportunities for certiorari review because such review is never "pending." *See David*, 318 F.3d at 345; *Anderson v. Litscher*, 281 F.3d 672, 674–75 (7th Cir. 2002).[3] For similar reasons, I also agree

first was dismissed to allow Lewis to exhaust his state remedies and the second was withdrawn by Lewis apparently because of the same exhaustion concern. The pendency of these petitions could not toll the running of the § 2254 year. *See Duncan v. Walker*, 533 U.S. 167, 181–82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

**2.** The United States Supreme Court commenced its recent discussion with respect to 28 U.S.C. § 2255 ¶ 6(1) finality with this observation: "Finality is variously defined; like

many legal terms, its precise meaning depends on context." *Id.*

**3.** The *Anderson* Court explained that "[w]hile section 2244(d)(1)(A) provides that the one year statute of limitations applicable to state prisoners seeking habeas relief begins to run from the latest of 'the conclusion of direct review or the expiration of the time for seeking such review,' section 2244(d)(2) tolls that limitations period during the time that 'a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pend-

with the State that the date that is important vis-à-vis the denial of the certificate of probable cause is the entering of the order on the Law Court's docket, which according to the copy supplied by the State was May 20, 2002, and not the date of Lewis's receipt of a copy of that order. *Donovan*, 276 F.3d at 89 n. 2, 92.

However, the utility and ease of counting the ninety days from entry of the judgment on the Law Court's docket only cleanly applies when the Law Court completely affirms the earlier judgment and sentence, thereby making it final. When there is a remand for further proceedings other finality issues can arise and this dynamic generated the second timeliness issue addressed by the parties pursuant to my order: What are the implications for "finality" in view of the fact that in disposing of his direct appeal the Law Court, in affirming the conviction, vacated the restitution order while affirming the remainder of the sentence? The case was remanded to the Superior Court for reconsideration of the restitution order. In my order to expand I asked:

> Why would not Lewis's ninety-days for seeking Supreme Court certiorari review be counted forward from this entry rather than the April 1998 decision? Indeed, would Lewis have been able to legitimately seek review by the United States Supreme Court prior to the entry of the March 16, 1999, order?

I noted that if the March 16, 1999, order was "the date on which the judgment became final," for purposes of § 2244(d)(1)(A), the § 2244(d)(1) year would commence running on June 16, 1999, and, as a consequence, no portion of the § 2244(d)(1) year would have run prior to the April 23, 1999, filing of Lewis's state post-conviction petition. Day one of the limitation period would have been the day after the completion of the (just under *thirty-seven-month*) post-conviction process on May 20, 2002, and this § 2254 would be unquestionably timely.

In response to this query the State argues that "28 U.S.C. § 1257(a) limits Supreme Court review of state court decisions only to '[f]inal judgments or decrees rendered by the highest court of a state in which a decision [on a federal question] could be had.' " (Resp. Reply to Order to Expand at 2, alterations by respondent.) Recognizing that normally the final judgment in a criminal matter is the sentence, *Parr v. United States*, 351 U.S. 513, 518, 76 S.Ct. 912, 100 L.Ed. 1377 (1956) ("We think neither point well taken. Final judgment in a criminal case means sentence. The sentence is the judgment," citation omitted), the State argues that in certain situations the United States Supreme Court will entertain a federal question even though there are lingering proceedings in the state courts.[4]

---

ing.' " *Id.* at 674–75 (quoting 28 U.S.C. §§ 2244(d)(1)(A), (d)(2)). In other words, the ninety days for § 2242(d)(1) purposes is a built-in part of the "expiration" process for determining if the judgment is "final"; whereas, if a petitioner never seeks certiorari review of the denial of state post-conviction relief it cannot be said that the matter was "pending" within the meaning of § 2244(d)(2).

4. In Lewis's case it appears that, even though all federal questions were resolved by the appeal, final sentence had not yet been im-

posed at the time the State contends the ninety days began to run. The actual procedural posture remains murky. On Count II of the Indictment there was a "stand alone" restitution order of $166,523 and a sentence of four years imprisonment. Restitution, in the absence of probation, is an authorized sentence under Maine law pursuant to 17–A M.R.S.A. § 1152(2–A). That sentence had been vacated. On Count I of the Indictment the sentence was fourteen years imprisonment with all but nine years suspended, followed by six years of probation. The transcript of the sen-

It is not at all clear to me that Lewis would have been successful if he attempted to get the Supreme Court to review his state court judgment in the ninety-day aftermath of the Law Court's remand. *See Bateman v. Arizona,* 429 U.S. 1302, 1306, 97 S.Ct. 1, 50 L.Ed.2d 32 (1976)(Rehnquist, J.) (denying petitioner's request for stay of state court mandate or bail while awaiting Supreme Court's action on then pending petition for certiorari, based in part on the fact that case was not yet final due to the pendency of the Arizona court's remand for the imposition of sentence). Furthermore, it is one thing to say that Lewis might have been successful if he attempted to persuade the Court to review his judgment of conviction and/or sentence even though the remanded restitution order remained undecided, s*ee Brady v. Maryland,* 373 U.S. 83, 85 n. 1, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); it is another thing to say that he was *required* to lodge a petition for certiorari review prior to the finalization of his sentence for purposes of determining the statute of limitations in this case.

tencing proceeding, held December 30, 1996, indicates that there were conditions placed on the probation, including a condition of restitution and no contact with certain named individuals. The probation conditions, which the judgment recites as attached thereto, have not been included in this record. Nor does the record in front of me contain a copy of the March 16, 1999, "order on restitution." However, the March 16 docket entry would certainly suggest that an amended judgment did NOT issue on that date. In my experience as a state court trial judge and a federal magistrate judge when a case is remanded by an appellate court for resentencing most commonly an amended judgment correcting the prior error issues. The fact that no amended judgment issued in this case creates greater uncertainty in my mind about the effect of the March 16 order vis-à-vis the finality determination and gives more weight to the State's argument that this court should treat the Law Court's decision as the operative final judgment from which to count the ninety days.

■ I could not locate a case that dealt precisely with this question as it relates to the § 2244(d) statute of limitation. In *Maharaj v. Secretary Department of Corrections,* the Eleventh Circuit dismissed without prejudice a § 2254 petition because the petitioner had not yet been resentenced by the state court following a remand concerning only his sentence. 304 F.3d 1345, 1348–49 (11th Cir.2002). In settling on this disposition the Court relied, in part, on the comity principals of *Younger v. Harris,* 401 U.S. 37, 44, 53–53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and the reasoning of the Ninth Circuit in *United States v. Colvin,* 204 F.3d 1221 (9th Cir.2000). In *Colvin* the Panel declared, in a decision examining a § 2255 statute of limitation concern, that in "cases in which we either partially or wholly reverse a defendant's conviction or sentence, or both, and expressly remand to the district court ... the judgment does not become final, and the statute of limitations does not begin to run, until the district court has entered an amended judgment and the time for ap-

However, given the clarity and ease with which I am able to resolve this case on its merits based upon the record compiled by the post-conviction justice, I think that the interests of justice are best served by resolving these timeliness and finality concerns favorably to the petitioner. The Supreme Court's latest pronouncement that "finality depends upon context," *Clay,* 123 S.Ct. at 1076–77, serves us well when applied to these facts.

In truth, it surprises me that the State has dug its heels in on the statute of limitations defense to Lewis's petition in view of the delay by the state courts in resolving his remand and post-conviction proceeding and in light of the diligence exhibited by Lewis with respect to lodging this § 2254 petition. *See* footnote 1 The statute of limitation is not jurisdictional and can be inadvertently or voluntarily waived by the respondent. *See Robinson v. Johnson,* 313 F.3d 128, 134–37 (3rd Cir.2002) (en banc) *petition for cert. filed* Feb. 14, 2003, NO. 02–9087.

pealing that judgment has passed." 204 F.3d at 1225. And, I note, that the Supreme Court, in its hot-from-the-oven discussion of the concept of finality vis-à-vis the § 2255 statute of limitation concern, stated: "Typically, a federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment." *Clay*, 123 S.Ct. at 1076–77. With respect to Lewis's state court judgment, the court of first instance did not "disassociate itself with the case" until entry of the restitution order after remand.[5]

I cannot resist comment on the State's argument that a determination that Lewis would not have been able to challenge the Law Court's order until after the resolution of the restitution remand, "would have led to the absurd result in this case of requiring Lewis to sit in prison for nearly a full year while he waited for the Superior Court to finally dispose of the restitution matter." It also argues that "if the restitution remand had *never* been acted on, by neglect or otherwise, Lewis could have served the entirety of his sentence before he would be eligible to seek certiorari review." The vision of federal comity under *Younger* demands some patience on the

part of petitioners to assure that the judgment of conviction is final before federal review commences. Furthermore, part of the AEDPA's basic premise is that the federal court should be mindful of the state's interest in the finality of its judgments. Lewis was patient, as his state post-conviction process exceeded three years and the order on remand was issued almost a year after the Law Court's decision. Lewis was also diligent in attempting to preserve his opportunity for § 2254 review, having filed two petitions with this court that were dismissed for want of exhaustion. *See supra* footnote 1. Given the history of this case, it is hard to swallow the State's argument that this § 2254 petition was untimely because Lewis should have recognized that the State might have dawdled indefinitely in finalizing the restitution concern remanded by the Law Court. The onus of making a judgment final under state law and state procedures ultimately must rest with the State, not Lewis and not this court. I believe that the facts of this case compel a finding that the petition was timely filed.

### The Merits

In this 28 U.S.C. § 2254 petition Lewis challenges his conviction for gross sexual assault and unlawful sexual contact on two

---

**5.** I recognize that the Fourth Circuit rejected the argument that the § 2255 statute of limitation does not begin to run on individual counts until a final judgment has been entered on all counts. *United States v. Wilson*, 256 F.3d 217, 219–20 (4th Cir.2001). In *Wilson* it took the view that in the context of federal convictions on multiple counts it is going to treat each count as a separate judgment of conviction and, accordingly, if a defendant appeals and has only a partial remand the finality of counts not remanded does not await the determination on remand. 256 F.3d at 218–20. Following such a piecemeal approach to judgments of convictions does not serve this court's interest in resolving habeas challenges to state court judg-

ments in one coherent, efficient review. *See cf. Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) ("Because a rule requiring exhaustion of all claims furthers the purposes underlying the habeas statute, we hold that a district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court."). And I note that one panel of the Fourth Circuit back pedaled from *Wilson* a bit in *United States v. Dodson*, 291 F.3d 268, 274–76 (4th Cir.2002). *See also Wilson*, 256 F.3d at 220–22 (Michael, J. concurring in judgment).

grounds. First he argues that his counsel gave constitutionally inadequate representation when Lewis lost the benefit of a plea agreement pursuant to which Lewis was to plead no contest to two Class C unlawful sexual contact counts, the subject of a 1996 indictment, with an agreement that the State would dismiss the pending Class A gross sexual assault charge, the subject, along with one of the two 1996 Count C charges, of a 1994 indictment. This agreement was initially accepted by the trial court but the court later had a change of heart after reading the pre-sentence report and decided it would not follow the agreement, a decision that lead to the withdrawal of Lewis's plea and a decision to proceed to trial, on what turned out to be the 1994 Class A indictment.

Lewis asserts that his counsel was ineffective for not pressing the issue regarding the effect of the no contest plea on the lesser offenses and the consequences for the prosecution's ability to bring him to trial on the earlier Class A/C indictment. In support of this claim he makes the following points. A reasonable attorney would have argued that the prosecution for the Class A offense under the 1994 indictment was barred because the prosecution had either actually or constructively dismissed the charge during the hearing on the plea agreement. At the hearing the Court inquired of the prosecution what was happening to the gross sexual assault charge and the prosecutor responded that it "would be dismissed." Lewis asserts that it is a "fair inference" that with this statement to the court the prosecutor was expressing his intent to dismiss the Class A charge and that "he in fact did so." His view of the situation is that once the Class A charge was dismissed it "could not be resurrected, if at all, without resubmission to and re-indictment by a grand jury." Although the docket sheet for the 1994 charge does not show that the prosecutor

dismissed the indictment, Lewis contends that the "indictment should be held to have been constructively dismissed"; at the very least the prosecutor should be equitably estopped from arguing that the indictment was not dismissed because of these representations at the hearing. Lewis alleges that he repeatedly told his attorney that he wanted him to argue that prosecution on the 1994 indictment was precluded and he views the Maine Rule of Criminal Procedure 11A(f) as providing a mechanism for his attorney to press for this result.

Lewis's second ground is a bit more opaque. Also framed as an ineffective assistance claim, this ground is premised on the theory that Lewis was exposed to "double jeopardy" because at the plea hearing the terms of the plea agreement were read into the record and the court's acceptance of the plea agreement at that time was an adjudication of guilt as to the 1996 Class C offenses, and thus jeopardy attached. He points out that when he moved to set aside his plea, he was told at the change of plea hearing that he was not allowed to change his mind and the court denied his motion. However, when the court indicated that it would not accept the plea agreement, Lewis was forced to withdraw his plea and it was not explained to him that the original 1994 Class A indictment would be the basis for his prosecution going forth. Lewis does not explain, expressly, how his attorney was ineffective in relation to this "double jeopardy."

## A. The State Court Adjudication as Measured by the Standards for Federal Habeas Review

Lewis appealed his conviction and his sentence. In his appeal of his conviction to the Law Court Lewis raised fifteen grounds. After the appeal was denied with respect to all these claims except the

aforementioned restitution concern, Lewis filed his petition for state post-conviction review listing thirteen grounds for relief. Among these claims was that the doctrine of double jeopardy barred his trial and that his trial attorney was ineffective with respect to not pursuing this concern and for not attempting to hold the prosecution to the plea agreement. A review of Lewis's pre and post hearing pleadings make it clear that he articulated this ground clearly and repeatedly to the post-conviction court. *See* 28 U.S.C. § 2254(e)(2); *see Casella v. Clemons*, 207 F.3d 18, 20 (1st Cir.2000).[6]

### B. Framework of Federal Review

Section 2254 relief can be afforded Lewis only if the state's adjudication of this claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.

28 U.S.C. § 2254(d). *See also Lockyer v. Andrade*, — U.S. —, 123 S.Ct. 1166, 1172–79, 155 L.Ed.2d 144 (2003) (discussing the limitations on a federal court's § 2254(d)(1) inquiry vis-à-vis state court convictions).

The First Circuit has framed these review standards in the context of the Sixth Amendment inquiry for ineffective assistance of counsel, relying on the Supreme Court precedents of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000):

To demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, [the § 2254 petitioner] must establish (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Scarpa v. DuBois*, 38 F.3d 1, 8 (1st Cir.1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

To prevail on his habeas petition, however, [the § 2254 petitioner] must demonstrate not just that the *Strickland* standard for ineffective assistance of counsel was met, but also that the [state court's] adjudication of his constitutional claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Feder-

---

**6.** The State argues that this double jeopardy ground was procedurally defaulted in the State courts because Lewis did not raise a double jeopardy claim in his direct appeal. It is true that the State court did not permit Lewis to bring a 'straight-up' double jeopardy claim in his state post-conviction petition because he did not raise it on direct appeal. (Order Jan. 3, 2001, at 1,3.) Lewis has clearly framed this § 2254 grounds as a hybrid ineffective assistance of counsel claim and the state post-conviction court expressly treated it

as such. Thus, I find the State's argument concerning the procedural default unpersuasive. (Given its position on this score, it is odd that the State did not argue that the dismissal of the claim prior to the post-conviction hearing was an independent and adequate state law ground, which it seems it would be if I were inclined to read his claim in this § 2254 petition as the same as the claim dismissed by the state court rather than as I read it, part of the claim actually ruled upon by the post-conviction justice.)

al law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result," *id.* at 406, 120 S.Ct. 1495. A state court decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495.

The Supreme Court has made clear that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410, 120 S.Ct. 1495. Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389; *see also Hurtado v. Tucker*, 245 F.3d 7, 15–16 (1st Cir.2001).

*Mello v. DiPaulo*, 295 F.3d 137, 142–43 (1st Cir.2002); *see also Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (undertaking the § 2254(d)(1)/ *Strickland* analysis); *Stephens v. Hall*, 294 F.3d 210, 217–23 (1st Cir.2002) (same).

Three further facets of the § 2254 review must be born in mind. First, while it is easy to identify *Strickland* as the appro-

priate § 2244(d)(1) "federal law" in the context of ineffective counsel challenges, there are myriad alleged infirmities in a criminal proceeding that might form the substantive underpinning of an ineffective assistance claim. On this score the First Circuit has explained:

The *Strickland* principles for deciding ineffective assistance of counsel claims are "clearly established" for purposes of the AEDPA. *See Williams*, 529 U.S. at 371–74, 120 S.Ct. 1495. Because the Supreme Court has yet to adopt more particularized guidelines for ineffectiveness of counsel claims, it is helpful to examine precedents from lower federal courts to determine how the general standard *applies* to a particular set of facts.

*Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir.2002) (emphasis added). In a sense, the subsection (d)(1) analysis in cases with novel factual predicates will turn on how the court applies the unparticularized *Strickland* test to the facts. *See cf. Lockyer*, 123 S.Ct. at 1172–76 (noting in the context of its Eighth Amendment cruel and unusual punishment challenges to the length of sentences that the broad principal of "gross disproportionality" was the only standard clearly established by the Court's precedents and the § 2254 review of the state court judgment for objective unreasonable application must respect the fact that the contours of the clearly established law are unclear). Second, with regard to the unreasonable application analysis, the First Circuit has clarified that, "[t]he reasoning used by the state court is, of course, pertinent. The ultimate question on habeas, however, is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Hurtado v. Tucker*, 245 F.3d 7, 20 (1st Cir. 2001) (citations omitted). Third, with regards to the state courts' factual determination, Congress has provided that "a de-

termination of a factual issue made by a State court shall be presumed to be correct" and that § 2254 applicants "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller–El v. Cockrell*, —— U.S. ——, 123 S.Ct. 1029, 1032, 154 L.Ed.2d 931 (2003) (distinguishing the objectively unreasonable standard of § 2254(d)(2) from the § 2254(e)(1) clear and convincing evidence standard applying to factual determinations, clarifying that the "decisions" analyzed under (d)(2) need not be proved to be objectively unreasonable by clear and convincing evidence in order for relief to lie).

## C. The Operative State Court Determination

In its decision and order the post-conviction court framed Lewis's claims, as relevant to this § 2254 petition, as follows:

Lewis's initial contention is that he was denied effective assistance of counsel when he was tried on the original [1994] indictment and was convicted of a Class A gross sexual assault [count] and a Class C unlawful sexual contact [count] after withdrawing his plea to two Class C unlawful sexual contact charges. According to Lewis, the failure to raise a double jeopardy argument or to seek to enforce his plea bargain constituted ineffective assistance of counsel.[7]

(Dec. & Order at 1.) The court continued with the following factual findings which I excerpt at length:

Lewis was originally indicted on the Class A and one Class C charge in November 1994. On January 8, 1996, represented by [an attorney], he appeared in court after various plea negotiations with the District Attorney. At that time the District Attorney submitted an information alleging to Class C unlawful sexual contact offenses. [The 1996 indictment.] The first of those counts was identical to the unlawful sexual contact charge in the original indictment, which had allegedly occurred in 1992. The other was a new charge alleging similar behavior in 1993.

The transcript indicates that it was contemplated that Lewis would enter a nolo contendere plea to the two unlawful sexual contact charges. Initially Lewis waived his right to have the grand jury consider the charges contained in the information. The court inquired about the original gross sexual assault charges in the indictment and the prosecutor states, "That would be dismissed." Lewis then inquired whether if he entered nolo pleas he would have to register as a sex offender and the court informed him that he believed so. Lewis then announced ... "I cannot accept no plea, Your Honor." The court responded, "Okay. Then your matter will stand for trial on the gross sexual assault charge." At that point Lewis responded, "You want to give me thirty years, you go for it."

[Lewis's attorney] then requested an opportunity to talk with his client. After a recess, [Lewis's attorney] and Lewis again appeared before the judge, who advised Lewis that under the law as it then stood, Lewis would not have to register as a sex offender if he were only convicted of the unlawful sexual contact charges set fort in the information. Lewis then entered pleas of nolo contendere to both charges in the indictment.

At that point the court engaged in its Rule 11 inquiry, the parties set forth the

---

7. The post-conviction court clearly viewed the ineffective assistance/double jeopardy claim as viable even though the double jeopardy claim itself had been dismissed.

jointly recommended sentence under the plea agreement, and the court then stated that "it will accept the plea as a voluntary and knowing plea[ ]."[ ] When the court asked if the parties anticipated sentencing that day, the prosecutor stated that he anticipated a presentence report. This came as no surprise to Lewis because a written document outlining his plea options, given to Lewis that morning, stated that there would be such a presentence investigation as part of the plea agreement. [Lewis's attorney] confirmed that he anticipated a presentence report, and the court stated it accepted Lewis's plea but that sentencing would take place at a later date when the court had more information.

Because of the method by which new charges were handled at that time, the clerk opened up a new docket number for the [1996] information ... but the existing [1994] indictment remained pending. On March 15, 1996, Lewis filed a pro se motion to withdraw his nolo pleas to the information based on newly discovered evidence. Lewis claimed that he had believed when he entered his plea that a motion to dismiss was filed by his counsel[,] based on the absence of certain DHS records[,] had been denied. Lewis also contended that there was medical evidence showing he was impotent which he suggested would form the basis for a defense to the charges.

Four days later Lewis followed up with a further pro se motion to dismiss, filed in the [1994 case] docket, based on evidence that he contended proved he was innocent. . . . [8]

On May 8, 1996, the court denied Lewis's motion to set aside his plea. On July 1, 1996, however, after receiving the presentence report, [the judge] advised Lewis that he was not prepared to accept the jointly recommended sentence calling for an initial unsuspended sentence of 59 days and advised Lewis that he had the right to withdraw his plea. Lewis thanked the court and withdrew his plea. He subsequently went to trial on the original indictment, was convicted of both gross sexual assault and unlawful sexual contact, and was sentenced to 14 years all but 9 years suspended on the gross sexual assault charge and 4 years concurrent on the unlawful sexual contact charge. (Dec. & Order at 1–5.) The post-conviction court proceeded to make the following determination with respect to these two claims:

Lewis now contends that it constituted ineffective assistance for [his attorney] not to have made the argument to the court that, once the plea bargain was rejected and Lewis's plea was withdrawn, Lewis could only be brought to trial on the information alleging two unlawful sexual contact charges, not on the original indictment. He bases that claim on both double jeopardy and on the contention that Lewis had a right to enforce his plea bargain.

The first problem with this argument is that the court's review of the file indicates that the issue was in fact raised with the court by [Lewis's attorney]. After [his attorney] wrote a July 10, 1996 letter to the prosecutor on this subject, the court issued a notice of setting for August 1, 1996 on both a motion to recuse and on *"which case for trial"* (emphasis added). The record thereafter reflects that after a phone confer-

---

**8.** Lewis had a change of attorneys during the course of the pre-trial proceedings but there is no need to distinguish between the two individuals for purposes of understanding his claims.

ence on August 1, the court endorsed the motion to recuse "motion denied" and went on to add "case is set for jury trial (94–566) not jury waived trial. (This endorsement, however, is contained in the CR–96–034 file.) From this the court can only infer that, although no one recollected this at the July 31, 2001 hearing, the issue was in fact brought to the attention of the court after [Lewis's attorney] raised the issue, and the court specified that the original indictment was to be tried."

In addition, the issue of whether Lewis should have gone to trial on the gross sexual assault charge was raised on his direct appeal and was given short sh[r]ift by the Law Court. *See State v. Lewis*, 1998 ME 83, ¶ 7, 711 A.2d 119, 123 n. 5 [(1998)].[9] Although the issue was considered on appeal only in the context of obvious error, the Law Court's discussion and treatment of the issue suggests the difficulty Lewis now faces in demonstrating that there was a reasonable probability he was deprived of a substantial ground of defense on this issue.

Even overlooking the above issues, a fundamental problem with Lewis's argument is that it assumes that the [1994]

indictment either was dismissed or should have been dismissed at the time of the plea. However, the indictment was never in fact dismissed. Nor did the State ever unconditionally promise to dismiss the indictment. Where there is a plea bargain to reduced charges, the usual understanding is that the prosecution will dismiss the more serious charge if there is a plea to the reduced charge, if the plea is accepted, and if sentence is ultimately imposed on the reduced charges pursuant to the agreement. As a result, while it was understood in this case that, and the prosecutor said, the Class A charge "would be dismissed[,]"[ ] the use of the conditional tense is significant—the gross sexual assault charge was to be dismissed if the plea agreement was implemented. When that did not happen, Lewis was tried on the original indictment.

Lewis was fully aware of this notwithstanding his contrary testimony at the July 31 [post-conviction] hearing. When he originally declined to enter his plea because of his belief that he would have to register as a sex offender, the court informed him that he would stand trial

9. The Law Court's comment on the issue on direct appeal was as follows:

> We also review for obvious error Lewis's contention, asserted for the first time on appeal, that "the State forced him to trial," and that it could not do so having already accepted his plea of *nolo contendere*. The docket entries indicate that Lewis made several attempts to withdraw his plea, that he was ultimately allowed to do so, and that he then proceeded to trial, objecting to neither the docket entries nor to the fact that he was going to trial on the original charges. *State v. Riggs*, 444 A.2d 352, 354 (Me.1982) (alleged variance in docket entries was not raised prior to appeal and thus is reviewed by the "manifest error affecting substantial rights" standard).
>
> The decision to grant or deny a motion to withdraw a plea is "based upon the facts

and circumstances of the particular case with the ultimate purpose of furthering justice." *State v. Malo*, 577 A.2d 332, 333 (Me.1990). *Cf. State v. Comer*, 584 A.2d 638, 640 (Me.1990) (trial court's decision to deny a motion to withdraw a guilty plea is reviewed only for an abuse of discretion). Lewis's argument now that he was forced to trial is belied by his persistent attempts to withdraw his plea and stand trial. He demonstrates no obvious error. *See also State v. Beal*, 446 A.2d 405, 408–09 (Me.1982)(rejecting the argument that acceptance of the plea is "a conviction as conclusive as a jury verdict" and thus irrevocable).

*Lewis*, 1998 ME 83, ¶ 7 n. 5, 711 A.2d at 123 n. 5 (Me.,1998).

on the gross sexual assault charge. Lewis expressly stated at that time that he understood he might get 30 years on that charge. Moreover, he acknowledged at the July 31 hearing that he knew if his own motion to withdraw had been granted, he would have gone to trial on the original indictment.

On a petition for post conviction review alleging ineffective assistance of counsel, the petitioner must show both (1) that there has been serious incompetency, inefficiency or inattention of counsel which falls below the performance that might be expected from an ordinary fallible attorney and (2) that there is a reasonable probability that such ineffective representation deprived the defendant of an otherwise available ground of defense or affected the outcome of the trial. *State v. Brewer*, 1997 ME 177[,] ¶¶ 15–17, 699 A.2d 1139, 1143–44 [(1997)]. In this case the court finds that the claim that Lewis could only be tried on the [1996] information was raised by his counsel and that, while counsel did not make the arguments now advanced by Lewis, this did not constitute performance below what might have been expected from an ordinary attorney. Moreover, there was no reasonable probability that, but for counsel's failure to pursue this claim more effectively, Lewis would have prevailed on this argument or was deprived of an available ground of defense on this issue.

Lewis's argument that double jeopardy precluded reinstitution of the gross sexual assault charge once he had pled to the information—even after he withdrew the latter plea—is not viable under the circumstances of this case. *See Ohio v. Johnson*, 467 U.S. 493, 500–02, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *United States v. Santiago Soto*, 825 F.2d 616, 620 (1st Cir.1987) (double jeopardy does not attach when guilty plea to less-

er offense is accepted but later rejected before imposition of sentence). Maine case[ ]law, even prior to *Ohio v. Johnson*, was fully in accord with the proposition that a plea to a lesser offense, once withdrawn or rejected, does not preclude prosecution on the original charge. *See State v. Beal*, 446 A.2d 405, 409–10 n. 3 (Me.1982).

Lewis's alternative argument is that counsel was ineffective in not seeking to hold the prosecution to the plea bargain as now envisioned by Lewis that if he entered a plea to the information (even though he later withdrew that plea), the State was precluded from trying him on the indictment. On this issue, the facts do not support the proposition that the State ever made such a bargain or could have been held to such a bargain. Enforcement of plea agreement is permissible "if the attorney for the State fails to comply with the plea agreement." Me. R.Crim. P. 11A(f). In this case the prosecution complied with the plea agreement. The court ultimately declined to go along, but there is no right to enforce a plea agreement against a court. If there were, this would eliminate the court's express discretion to reject a plea agreement under Rule 11A(d). Under these circumstances, counsel's failure to pursue enforcement of the plea agreement did not constitute substandard performance and there is no reasonable probability that Lewis could[ ]have prevailed on this claim.

Lewis's argument that once the State offered a plea to a reduced charge it was required to dismiss the original charge even if the plea was withdrawn or the recommended sentence was rejected by the court would convert Rule 11A's express provision contemplating pleas to a "lesser or related offense" into an unwarranted trap for the unwary prosecu-

tor. In any event, given Lewis's insistence that he wanted to withdraw his plea on the information and go to trial on the gross sexual assault charge, he was not prejudiced by being allowed to do so. *Cf. State v. Lewis,* 1998 ME 83, § 7 n. 5, 711 A.2d at 123 n. 5.

Lewis's last sally on this issue is that it at least constituted ineffective assistance for counsel not to have explained to him, before he withdrew his plea on the information, that he would thereby expose himself to prosecution on the [1994] indictment. The threshold problem with this argument is that, based on the record and the evidence at the July 31, 2001 [post-conviction] hearing, Lewis knew precisely what would happen. He had been informed in no uncertain terms on January 8, 1996 that if he decided not to enter a plea on the two charges in the information, he would be tried on the gross sexual assault charge. He retained that understanding when he unsuccessfully sought to withdraw his plea and he further retained that understanding when the court decided, after review of the presentence report, to allow him to withdraw his plea. Since Lewis was under no misapprehension when he withdrew his plea, the court need not consider whether counsel failed to adequately apprise him and, if so, whether this constituted ineffective assistance for purposes of post-conviction review. Lewis had been asking to withdraw his plea since March and was willing to take his chance on the Class A charge. He readily withdrew his plea and thanked the court for the opportunity.

(*Id.* at 5–10, footnotes and record citations omitted.)[10] With respect to its treatment of Lewis's contention that his attorney did not adequately explain to him his exposure as a consequence of withdrawing his plea, the court (foot)noted that one of the State's exhibits was a January 28, 1996, letter from his attorney advising him that if he successfully withdrew his no contest pleas he would be "risking the remainder of your life behind bars." (*Id.* at 9 n. 8.)

### D. The Merits of Lewis's Claims in the Federal Venue

When reaching this conclusion that there was no ineffective assistance of counsel on these two grounds the post-conviction court relied on a string of Maine Law Court cases in articulating the broad parameters of the ineffective assistance standard. However, the standard Maine courts apply is to be read as being equivalent to the *Strickland* ineffective assistance of counsel analysis. *Kimball v. State,* 490 A.2d 653, 656 (Me.1985); *accord Brewer v. Hagemann,* 2001 ME. 27, ¶ 9, 771 A.2d 1030, 1033 (2001); *see also Mello,* 295 F.3d at 144 (observing that the *Strickland* and Massachusetts standards are the "functional equivalent" for purposes of proceeding with the § 2254(d)(1) determination). Thus, the court applied a rule that is in harmony with the governing, non-particularized law set forth by the United States Supreme Court's *Strickland. Williams,* 529 U.S. at 405, 120 S.Ct. 1495; *Mello,* 295 F.3d at 142; *Ouber,* 293 F.3d at 26. With respect to both of Lewis's claims I could locate no cases from the Supreme Court that involved facts that

---

**10.** I have reproduced the pertinent portion of the post-conviction order in its entirety because the factual findings crucial to the disposition of this case are clearly set forth in the opinion and the opinion is unpublished and therefore not otherwise readily accessible. I also note that the post-conviction court's legal conclusions regarding both aspects of the in-

effective assistance claim provide a model of clarity. Pursuing either the double jeopardy argument or the enforceability of the plea bargain contention would have been futile under the cited federal precedent and existing state procedures, ergo it could not possibly have been ineffective assistance of counsel to fail to do so.

were materially indistinguishable from Lewis's. *Williams,* 529 U.S. at 406, 120 S.Ct. 1495.

 If Lewis is to have any foothold for challenging the post-conviction court's determination it would be that, having identified the correct governing legal principles, the court unreasonably applied the principles to the facts of the prisoner case. *Id.* at 413, 120 S.Ct. 1495.[11] The Supreme Court's decision in *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) is a sound basis for the court's conclusion that there was no double jeopardy, or "implied acquittal" on the greater charges when the parties reached the plea agreement. *Id.* at 497–52, 104 S.Ct. 2536. Furthermore, as referenced by the post-conviction court, the First Circuit has expressly held "that jeopardy did not attach when the district court accepted the guilty plea to the lesser included offense and then rejected the plea without having imposed sentence and entered judgment." *United States. v. Santiago Soto,* 825 F.2d 616, 620 (1st Cir.1987). Equally rational are its observations that the Maine Rules of Criminal Procedure governing pleas expressly provide that a court has discretion to reject a plea agreement and that the rules are not meant to "trap" the prosecutor willing to bargain vis-à-vis lesser offenses. The court's factual findings that the prosecution complied with the plea agreement and its conclusion that Lewis was aware that he was vulnerable to the greater charges throughout the plea process commencing January 8, 1996, through the time that he actually withdrew his plea are, once again, presumptively correct. § 2254(e)(1); *Miller–El,* 123 S.Ct. at 1032.

Thus, I conclude that the state post-conviction court's conclusion that Lewis was not prejudiced by any alleged failures of counsel during these plea events is not an objectively unreasonable application of *Strickland.* *See Lockyer,* 123 S.Ct. at 1172–76.

### *Conclusion*

For the foregoing reasons, I recommend that the Court **DENY** Lewis 28 U.S.C. § 2254 relief.

March 10, 2002.

---

**11.** I have compared the post-conviction court's ample and fastidious findings of fact to the record of the proceedings in question and conclude with no doubt that there is no basis for foregoing the presumption of correctness under 28 U.S.C. § 2254(e)(1) nor grounds for reaching the conclusion that the decision was based on an unreasonable determination of the facts under § 2254(d)(2). Indeed, Lewis's petition attacks the legal conclusions and not the factual findings.